Farimah Brown, City Attorney (State Bar No. 201227)
Brendan Darrow, Assistant City Attorney (State Bar No. 273413)
Marc Shapp, Deputy City Attorney (State Bar No. 266805)
BERKELEY CITY ATTORNEY'S OFFICE
2180 Milvia Street, Fourth Floor
Berkeley, CA 94704
Telephone: (510) 981-6997
Facsimile: (510) 981-6960
Email: MShapp@berkeleyca.gov

Attorneys for Defendant CITY OF BERKELEY

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE FISHER, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>CITY OF BERKELEY, et al.<br><br>  Defendant. | Case No.  3:24-CV-08134-CRB<br><br>**DEFENDANT CITY OF BERKELEY'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br><u>Hearing</u>:<br><br>Date: TBD<br>Time: TBD<br>Judge: TBD<br><br>Action Filed: November 19, 2024 |

1  Respondent CITY OF BERKELEY (City) hereby submits its Opposition to Plaintiffs'
2  Motion for Temporary Restraining Order (TRO). For the reasons set forth below, the Court
3  should deny the application for TRO. City operations are planned for tomorrow, November 20,
4  2024. **However, the City has no plans to evict the Plaintiffs from their encampments**
5  **tomorrow.** If the Court determines the matter is not appropriate for disposition without oral
6  argument, the City respectfully requests a hearing be held no later than today. *See* Fed. R. Civ. P.
7  65(b)(3), (4). Alternatively, if the Court determines a TRO should issue, any such order must be
8  narrowly tailored to prohibit actions against only the Plaintiffs.

## INTRODUCTION

10  Plaintiffs seek this Court's intervention to prevent the City of Berkeley (City) from
11  enforcing local ordinances of general applicability to conduct in City parks and the placement of
12  unpermitted structures and other personal property next to City-owned buildings or on the public
13  right of way. Plaintiffs' motion fails to establish any of the requirements for injunctive relief.
14  First, Plaintiffs have no likelihood of success on the merits of their claims. Plaintiffs'
15  Motion for TRO is premised on two legal claims, that the City is in violation of Title II of the
16  Americans with Disabilities Act and that eviction will result in a state created danger. **However,**
17  **Plaintiffs are not being subject to encampment closure or eviction from their current**
18  **campsites**. Declaration of Peter Radu (Radu Decl.) ¶¶ 12, 15, 21. The only encampment
19  currently slated for closure is located near 4th and Bancroft Streets, where none of the Plaintiffs
20  claim to reside. Plaintiffs lack standing to seek injunctive relief with respect to a location where
21  they are not subject to the City's actions. Plaintiffs cannot show any risk of irreparable harm
22  because there is no actual or imminent violation of their rights. Moreover, Plaintiffs' assertion of
23  a state created danger based on upcoming rains is both ironic and perverse, because the relief
24  they seek would prevent the City from timely opening an emergency winter weather shelter.
25  As such, both the balance of equities and the public interest tip strongly in favor of the
26  City. The City and the public have a significant interest in enforcement of the law to ensure the
27  safety and security of public property. Because of the logistical challenges of organizing
28  encampment responses, any temporary restraining order effectively enjoins the City from taking

actions for weeks or even months. The conditions at Old City Hall prevent the City from completing work necessary to open a safe and accessible emergency shelter before rains begin.

The general public and the unhoused community in particular, share an interest in ensuring that the City is able to provide shelter from the rain. No injunction should issue.

If the Court issues a temporary restraining order, the requirement that such order be "narrowly tailored to remedy the specific harm shown," *Bresgal v. Brock*, 843 F.2d 1163, 1170 (9th Cir. 1987), means that it must only address these three Plaintiffs and allow the City to perform its essential functions at the encampments identified in the TRO or anywhere else.

## PROCEDURAL HISTORY

On Friday, November 15, 2024, a letter was hand delivered to the City Clerk's Office threatening this litigation. Declaration of Peter Radu (Radu Decl.) ¶ 22. On Monday, November 18, 2024, Plaintiffs served the City with the complaint and Motion for TRO. Dkt. No. 1.

## STATEMENT OF FACTS

The City has created an interdepartmental Homeless Response Team (HRT) to address the needs of the unhoused population in Berkeley. Radu Decl. ¶ 5. In recent weeks, new encampments have arisen across Berkeley, apparently created for the express purpose of bringing people from other cities in an attempt to force the City to grant unhoused individuals preferential rights to the public right of way or other public spaces. *Id.* ¶¶ 6, 7, 10, 13, 16. **As of the filing of this brief, the City has no imminent plans to close the encampments where Plaintiffs reside or to evict these Plaintiffs from those encampments**. *Id.* ¶¶ 12, 15, 21.

### 4th & Bancroft and City Corporation Yard Encampments

An organization called Where Do We Go established a new encampment located near 4th Street and Bancroft Way in Berkeley to encourage individuals to move to that area from other encampments in mid-October 2024. *Id.* ¶ 6-7. On November 13, 2024, the HRT posted a "Notice of Encampment Closure for Construction – Beginning November 18" at the 4th & Bancroft Encampment. *Id.* ¶ 8. The 4th & Bancroft encampment is being closed due to a permitted and shovel-ready construction project. *Id.* The notice states that personal property will be handled in accordance with City policy, explains how to reclaim possessions stored by the

City. No one camping at 4th & Bancroft requested storage or assistance from the City when the notice was posted. None of the Plaintiffs claim to currently reside at 4th & Bancroft.

**None of the Plaintiffs claim to live at the 4th & Bancroft Encampment.** *See* Declaration of Diane Fisher; Declaration of Staci Prado, Declaration of Mark Tayne.

Within 24 hours of the City posting of the November 13, 2024 notice, Plaintiff Staci Prado voluntarily vacated the 4th & Bancroft encampment and moved approximately 1 mile away to her current location in front of the City Corporation Yard. *Id.* ¶ 9. She did not request any assistance or accommodation from the City prior to moving. *Id.* On November 14, 2024, the HRT posted a "Notice to Vacate" at the City Corporation Yard encampment, informing campers that their encampment violates City "curtilage" requirements, which prohibit structures in or on the exterior grounds of a City building without a City-issued permit. *Id.* ¶ 11. The notice states that personal property will be handled in accordance with City policy, and campers were further informed how to reclaim possessions collected and stored by the City. *Id.* No one camping at the City Corporation Yard encampment requested storage or assistance from the City when the notice was posted. *Id.* If an individual requests assistance to consolidate or store their belongings at the time of closure, City staff may assist consistent with City policy and to the extent the individual's belongings are not soiled, contaminated, or otherwise unsafe to handle. *Id.*

**The City does not have imminent plans to close the City Corporation Yard encampment or evict Ms. Prado**. *Id.* ¶ 12.

Ohlone Park Encampment

On or about October 23, 2024, a multi-person encampment was pitched in Ohlone Park for the first time. Radu Decl. ¶ 13. The Berkeley Municipal Code (BMC) and park rules prohibit placing any structures, including tents, with a footprint of greater than 10 square feet and also prohibit anyone from entering or staying in City parks between the hours of 10pm and 6am. *Id.* ¶ 14. On November 13, 2024, the HRT posted a "Notice of Violation" in Ohlone Park notifying campers that they were in violation of park rules and the Berkeley Municipal Code. *Id.* The notice informs campers of the violations, and it informs campers that personal property would be handled in accordance with City policy as well as how to reclaim possessions stored by the City.

*Id.* No one camping in Ohlone Park requested storage or assistance from the City when the notice was posted. *Id.* If an individual requests assistance to consolidate or store their belongings at the time of closure, City staff may assist consistent with City policy if the individual's belongings are not soiled, contaminated, or otherwise unsafe to handle. *Id.* **The City does not have imminent plans to close the Ohlone Park encampment or evict Ms. Fisher**. *Id.* ¶ 15.

<u>Old City Hall Encampment</u>

Starting in late September 2024, Where Do We Go established an encampment at Old City Hall. Radu Decl. ¶ 16. Old City Hall is used by the City in partnership with Dorothy Day House as the Berkeley Emergency Storm Shelter (BESS) in winter. *Id.* ¶ 17. Dorothy Day House operates BESS to provide—among other things—shelter, meals, access to medical care and housing support. *Id.* The City and/or Dorothy Day House must perform work ahead of time to open BESS for the upcoming season on December 2, 2024. *Id.*

On October 4, 2024, Deputy City Manager Peter Radu invited Andrea Henson, the executive director and legal counsel for Where Do We Go, to meet at Old City Hall to assess impacts on the opening of BESS. *Id.* ¶ 18. Despite accepting the invitation, Ms. Henson did not show up at the appointed time. *Id.* Mr. Radu emailed Ms. Henson to identify particular locations at Old City Hall where campers' tents or belongings prevent installation of ADA-accessible portable toilets and wash stations, block access to the facilities, prevent the safe movement of people in and out of the building, or pose fire safety hazards. *Id.* Ms. Henson acknowledged receipt and stated she would follow up, but the conditions have not improved. *Id.*

The conditions surrounding Old City Hall jeopardize the City's ability to open BESS, potentially depriving unhoused Berkeley residents of storm shelter just as the winter season begins. *Id.* ¶ 19. Because attempts to work cooperatively to address the conditions failed, the HRT posted a "Notice to Vacate" on November 15, 2024. *Id.* ¶ 20. The notice states that personal property will be handled in accordance with City policy, and explains how to reclaim possessions stored by the City. *Id.* If an individual requests assistance to consolidate or store their belongings at the time of closure, City staff may assist consistent with City policy if the individual's belongings are not soiled, contaminated, or otherwise unsafe to handle. *Id.*

Despite the need to perform work around Old City Hall to prepare to open BESS for the winter season, **The City does not have imminent plans to close the Old City Hall encampment or evict Mr. Tayne**. *Id.* ¶ 21.

The City has limited time and resources to dedicate to encampment operations. Whenever the court halts the City's operations it creates a domino effect slowing down effective operations throughout the City. *Id.* ¶¶ 23-25. In particular, if the Plaintiffs' requested relief is granted, the City, the public at large, and the unhoused community in particular risk being without an emergency winter shelter before the start of the rainy season. *Id.* ¶ 19.

## ARGUMENT

### I.  Legal Standard

"The standard for issuing a temporary restraining order and issuing a preliminary injunction are substantially identical." *Brandr Grp., LLC v. Elec. Arts Inc.*, No. 23-CV-02994-HSG, 2023 WL 4297571, at *2 (N.D. Cal. June 30, 2023). An injunction "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking an injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. "The first factor is the 'most important.'" *Garcia v. City of Los Angeles*, 11 F.4th 1113, 1118 (9th Cir. 2021). "To establish a likelihood of success, plaintiffs need not conclusively prove their case or show that they are 'more likely than not' to prevail." *Stewart v. City & Cnty. of San Francisco, California*, 608 F. Supp. 3d 902, 911 (N.D. Cal. 2022). "Rather, a 'fair chance' of success is the standard for granting preliminary injunctive relief." Id.

Post-*Winter*, a complaint's allegation of a plausible claim does not suffice to satisfy the success-on-the-merits element necessary for a preliminary injunction. *Arc of California v. Douglas*, 757 F.3d 975, 993-94 (9th Cir. 2014); see also *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1087 (9th Cir. 2015). "The irreducible minimum [for a preliminary injunction] ... is that the moving party demonstrate a fair chance of success on the merits or questions serious enough to require litigation. No chance of success at all will not suffice.'" *Arc of California*, 757

F.3d 975 at 994. As the Supreme Court explained, "[i]t is not enough that the chance of success on the merits be 'better than negligible.' [Citation.] Even Plaintiff acknowledges that '[m]ore than a mere "possibility" of relief is required.'" *Nken v. Holder*, 556 U.S. 418, 434 (2009).

## II.  The Balance of Equities and the Public Interest Disfavor this Injunction.

Before imposing an injunction, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987). The courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (citations omitted).

These encampments were recently created for the purpose of bringing unhoused people into conflict with the City to try to extract preferential rights to the public right of way and other public spaces. Radu Decl. ¶ 6. The closure of City parks at night has been in effect in its current from for over 20 years. *See* BMC 6.32.020. Encampment leaders at Old City Hall have ignored the City's attempts to work cooperatively to resolve issues impacting the City's ability to open a winter weather emergency shelter. Id. ¶ 18. **Even so, the City is not currently seeking to close the three encampments where the Plaintiffs reside**. *Id.* ¶¶ 12, 15, 21.

Equity cannot favor parties who have intentionally triggered the consequences they now seek to avoid. If the Plaintiffs succeed, the broader public, and other unhoused residents of Berkeley in particular face the risk that a necessary emergency shelter will not open before the winter rains. Both the balance of equities and the public interest tip strongly in the City's favor.

## III.  Any Injunction Must Be Limited to the Plaintiffs.

"The general rule regarding the scope of preliminary injunctive relief is that it 'should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court.'" *Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018), *rev'd in part, vacated in part sub nom. Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1 (2020) (*quoting Los Angeles Haven Hospice, Inc. v. Sibelius*, 638 F.3d 644, 664 (9th Cir. 2011). "This rule applies with special force where there is no class certification." *Los Angeles Haven Hospice*, 638 F.3d at 664. "Where relief can be

structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown." *Bresgal v. Brock*, 843 F.2d 1163, 1170 (9th Cir. 1987).

Here, each of the Plaintiffs makes particularized claims and seeks individualized relief. As such, there is simply no basis to issue an order that enjoining the City with regard to any other person. Plaintiffs lack constitutional standing to seek relief on behalf of others. "In federal court, Article III jurisdiction must obtain; the Ninth Circuit has so held." *Circle Click Media LLC v. Regus Management Group LLC*, 2016 WL 3879028, at *3 (N.D. Cal., July 18, 2016, No. 12-CV-04000-EMC). At a constitutional minimum, standing requires the party invoking jurisdiction to show "some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (citations and internal quotation marks omitted). "A plaintiff 'bears the burden of showing that he has standing for each form of relief sought.'" *Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 923 (N.D. Cal. 2012). Any injunction must be limited to the Plaintiffs.

### IV.  Plaintiffs Are Unlikely to Succeed on the Merits.

Plaintiffs cannot meet their burden as to the first element of the *Winter* test.

#### A.  The City Is Not in Violation of the ADA.

Title II of the ADA provides that no qualified individual, as a result of their disability, shall "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Its implementing regulations require state agencies to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i). Plaintiffs must show that (1) they are "qualified individual[s] with disabilit[ies]"; (2) they were "excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or w[ere] otherwise discriminated against"; (3) "by

reason of [their] disabilit[ies]." *Payan*, 11 F.4th at 737 (quoting *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)).

Even if it were true that all of the Plaintiffs are qualified individuals with disabilities, they have failed to demonstrate either the second or third elements of an ADA violation.

- Plaintiff Fisher alleges a variety of ailments, including uncontrolled seizures, arthritis, memory loss and dissociative identity disorder. Dkt. No. 6 However, the only alleged exclusion, denial of benefits, or discrimination by the City is alleged unwillingness to accommodate her inability to deconstruct her tent. Dkt. No. 6. The City is able to accommodate this, but Ms. Fisher has not asked. Radu Decl. ¶ 14.
- Plaintiff Payne claims to suffer from mobility issues caused by diabetes-related amputations and chronic pain in his bones. Dkt. No. 6. However, Mr. Payne does not allege *any* exclusion, denial of benefits, or discrimination by the City, nor does he seek an accommodation for his disability. Even so, the City is able to assist Mr. Payne in the consolidation or storage of his belongings if requested. Radu Decl. ¶ 20.
- Plaintiff Prado claims mobility limitations that make it impossible for her to carry heavy objects or walk long distances, and further claims she requires assistance to consolidate her belongings or relocate. Dkt No. 6. Ms. Prado also admits she moved approximately one mile from 4th Street and Bancroft Way to the City Corporation Yard on less than 48 hours' notice. Dkt. No. 6 The City is able to assist in the consolidation or storage of belongings if requested. Radu Decl. ¶ 11.

In this case, the service, program, or activity at issue is the enforcement of City ordinances; Plaintiffs are not subject to enforcement because of their disabilities. Plaintiffs do not seek reasonable accommodations to comply with the law, they are instead demanding to be exempted from the law's requirements so that they can take indefinite control of public property.

### B. The "State Created Danger" Doctrine Does Not Apply.

Plaintiffs' first argument in favor of an injunction is based on the "state created danger" exception to the general rule that the due process clause does not require a government to protect a plaintiff. This argument is misplaced. The City goes to great lengths to offer and provide shelter, but there is no fundamental right to housing. *Lindsey v. Normet*, 405 U.S. 56, 74 (1972). Plaintiffs cite no authority to support a right to a sanctioned encampment or to take away public use of a street to instead create one's place of residence, as each of the Plaintiffs demand here.

Liability based on a state created danger arises *only* where an official places a person in a situation of known danger with deliberate indifference to their physical safety. *Kennedy v. City*

*of Ridgefield*, 439 F.3d 1055, 1061-62 (9th Cir. 2006). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 410 (1997). "In examining whether [the city] affirmatively places an individual in danger, [a court does] not look solely to the agency of the individual, nor [does it rest its] opinion on what options may or may not have been available to the individual. Instead, [the court must] examine whether [the city] left the person in a situation that was more dangerous than the one in which they found [them]." *Kennedy*, 439 F.3d at 1062 (citation omitted).

Here, the Plaintiffs allege "the City of Berkeley is <u>placing Plaintiffs in particularized danger</u> by evicting them this week." Motion for TRO, p. 5, Dkt No. 1 (emphasis original). **However, none of the Plaintiffs are currently facing eviction**. Radu Decl. ¶¶ 12, 15, 21. Plaintiffs also point to an "atmospheric river" predicted to arrive in and around Berkeley in the coming days as a source of danger. Dkt No. 1, pp.7-8. The injunction Plaintiffs seek would delay the opening a shelter specifically meant to mitigate such dangers.

### V.  The Plaintiffs Are Not at Risk of Irreparable Harm.

Plaintiffs cannot show that they are likely to suffer any immediate or irreparable harm absent a TRO. A TRO is intended to preserve the status quo and prevent irreparable harm until a hearing can be held on a preliminary injunction. *See E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) ("[A] TRO should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." (quotation omitted)); *see also* Fed. R. Civ P. 65(b). But Plaintiffs have not shown the immediacy of any alleged harm if the Court does not grant it interim relief. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("[A] plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief.").

"To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury."

*Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citing *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)); see also *Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 760 n.8 (9th Cir. 2018) ("it is the plaintiff's burden to put forth specific evidence from which the court can infer irreparable harm").

In support of a TRO, the court is required to make "requisite factual determinations regarding irreparable harm and apply those factual findings to the four-factor framework to determine whether injunctive relief is warranted"; failure to do so constitutes abuse of discretion. *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 1000 (9th Cir. 2011). The court's finding of the likelihood of irreparable harm must be based on the evidence in the record. *Center for Food Safety v. Vilsack*, 636 F.3d 1166, 1173-73 (9th Cir. 2011) (grant of preliminary injunction reversed where the findings of irreparable harm were unsupported by the record); see also *Toyo Tire Holdings of Americas Inc. v. Continental Tire N. Am., Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (a court must make "specific findings" with for each of the *Winter* factors).

Plaintiffs' motion asserts that their disabilities require assistance or extra time to move from their current locations. The City would provide physical assistance if asked. Radu Decl. ¶¶ 11, 14, 20. However, it is clear from their declarations that Plaintiffs do not actually want assistance or extra time in order to comply; they each claim to want to stay where they are. For example, despite having arrived at the Ohlone Park encampment on October 23, 2024, Ms. Fisher now claims "I only know to return to this area." Declaration of Diane Fisher, p. 4. Mr. Tayne claims to want to move indoors, but also says he previously rejected shelter the Veterans Memorial Hall because they wake him up too early. Declaration of Mark Tayne, p. 2. Ms. Prado has rejected multiple offers of shelter by the City. Radu Decl. ¶ 7.

## **CONCLUSION**

Plaintiffs' motion fails to establish any of the requirements for injunctive relief. Accordingly, no TRO should issue. At a minimum, if the Court considers Plaintiffs' allegations to have merit, any order of the Court must be narrowly tailored to address the specific claims of the Plaintiffs only.

|   |   |
|---|---|
| | Respectfully Submitted, |
| | CITY ATTORNEY'S OFFICE |
| Dated: November 19, 2024 | ___/s/ Marc Shapp_____ |
| | |
| | MARC SHAPP |
| | Attorneys for Defendant CITY OF BERKELEY |